IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| VÍCTOR VELÁZQUEZ-CAUSSADE, et al., | |
| Plaintiffs, | |
| v. | CIVIL NO.: 13-1761 (MEL) |
| RAMÓN ORTA-RODRÍGUEZ, et al., | |
| Defendants. | |

## OPINION AND ORDER

### I.   PROCEDURAL HISTORY

On October 10, 2013, Víctor Velázquez Caussade ("Velázquez"), Sylvia M. Meléndez Santiago ("Meléndez"), José M. Pérez Olivares ("Pérez") and Maraliz González ("González") filed an amended complaint pursuant to 42 U.S.C. § 1983 against the Commonwealth of Puerto Rico (the "Commonwealth"), Ramón Orta Rodríguez ("Orta") and Benjamín Cruz Lugo ("Cruz"), in their official and personal capacities, alleging violations of their rights under the First, Fifth, and Fourteenth Amendments of the United States Constitution, under §§ 1, 4, 6, and 7 of Article II of the Constitution of the Commonwealth of Puerto Rico, and P.R. Laws Ann. tit. 29, §§ 136-38, 146. ECF No. 5. Specifically, Velázquez and Pérez claim that their duties and responsibilities were taken away because of their political affiliations. Id. Their wives, Mélendez and González, aver that they have suffered mental pain and anguish as a result of learning of the treatment of their husbands. Id. at 5. On March 18, 2014, the court dismissed Mélendez's and González's First Amendment claims (ECF No. 37) and on March 25, 2014 it dismissed all Fifth Amendment claims in this case (ECF No. 39). Pending before the court is a motion for summary judgment (ECF No. 57) filed on behalf of Cruz and the Commonwealth (collectively

1

"defendants"), plaintiffs' response in opposition (ECF No. 95), and a (ECF No. 103). For the reasons that follow defendants' motion for summary judgment is granted in part and denied in part.

## II.   UNCONTESTED MATERIAL FACTS

Since January 1, 2013, defendant Orta has been the Secretary of the Puerto Rico Department of Sports and Recreation (the "DSR"). ECF Nos. 95-1, at 12, ¶ 13; 103-1, ¶ 13. Prior to that date he worked at the DSR as an aide to the previous Secretary, David Bernier. Id. Since approximately 2000, Orta has been affiliated with the Popular Democratic Party ("PDP"). ECF Nos. 95-1, at 12 ¶ 14; 103-1, ¶ 14. On February 1, 2013, Cruz was appointed Regional Director of the Southwest Region of the DSR. ECF Nos. 57-2, ¶ 3; 95-1, ¶ 3. He is a member of the PDP. ECF Nos. 95-1, at 12 ¶ 10; 103-1, ¶ 10.

Velázquez has worked at the DSR since 1983 and is affiliated with the New Progressive Party ("NPP"). ECF Nos. 95-1, at 10-11, ¶¶ 1, 5; 103-1, ¶¶ 1, 5. From 2009 to 2012, during Luis Fortuño's tenure as governor, Velázquez served as *de facto* Regional Director Southwest Region of the DSR, but continued to hold a career position as Deputy Director of the Southwest Region of the DSR. ECF Nos. 57-2, ¶¶ 1-2; 95-1, at 1, ¶¶ 1-2. Velázquez has not been transferred or suspended, his pay has not been reduced, and his fringe benefits have not been affected. ECF Nos. 57-2, ¶¶ 19-21, 24; 95-1, at 5-6, ¶¶ 19-21, 24. At some point in "early" 2013, Cruz assigned Velázquez the duty of coordinating the government requisition and purchasing process for the servicing and maintenance of several air-conditioning units, potable water pumps, and the fire-alarm system of the Centro-American stadium. ECF Nos. 57-2, ¶¶ 5, 7; 95-1, at 2, ¶¶ 5, 7. In response, Velázquez made arrangements for the air-conditioning system to be fixed. ECF Nos. 57-2, ¶ 6; 95-1, at 2, ¶ 6. In May or June 2014, Cruz assigned Velázquez "the duty of

coordinating the connection and interplay of a sanitary pipeline between over three hundred houses and two [DSR] stadiums to prevent the 'overflowing of the waters.'" ECF Nos. 57-2, ¶¶ 6, 8; 95-1, at 2, ¶¶ 6, 8. Around August, 2014, Cruz tasked Velázquez with representing him at a School of Agriculture forum.  ECF Nos. 57-2, ¶ 9; 95-1, at 2, ¶ 9.

Pérez has worked at the DSR since 1988, held the position of Transportation Officer in the Southwest Region of the DSR since 1996, and is a member of the NPP. ECF Nos. 95-1, at 11, ¶¶ 3, 8; 103-1, ¶¶ 3, 8. As Transportation Officer, Pérez keeps control of the consumption of diesel and oil in the vehicles assigned to the Western Office of the DSR. In March, April, May, June, July, August, and December, 2013, and January through June, 2014, Pérez completed and filed monthly reports on the consumption of gasoline, diesel, and oil of light and heavy vehicles. ECF Nos. 57-2, ¶¶ 28, 32, 45-46; 95-1, at 8, 10, ¶¶ 28, 32, 45-46. He also submits a monthly report on the utilization of vehicles. ECF Nos. 57-2, ¶ 32; 95-1, at 8 ¶ 32. Pérez sent Cruz a letter, dated May, 2013, concerning traffic accident reports in which vehicles belonging to the DSR were involved. ECF Nos. 57-2, ¶ 31; 95-1, at 8, ¶ 31. During February, 2014, Pérez "executed the inspection" of at least fourteen vehicles belonging to the DSR. ECF Nos. 57-2, ¶ 35; 95-1, at 8, ¶ 35. In May, 2014, Pérez executed and completed at least three requisition actions for services. ECF Nos. 57-2, ¶ 36; 95-1, at 9, ¶ 36.

### III.   LEGAL STANDARD

The purpose of summary judgment "is to pierce the boilerplate of the pleadings and assay the parties' proof in order to determine whether trial is actually required." Wynne v. Tufts Univ. Sch. of Med., 976 F.2d 791, 794 (1st Cir. 1992). Summary judgment is granted when the record shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "'A dispute is genuine if the evidence about

the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party. A fact is material if it has the potential of determining the outcome of the litigation.'" Farmers Ins. Exch. v. RNK, Inc., 632 F.3d 777, 782 (1st Cir. 2011) (quoting Rodríguez-Rivera v. Federico Trilla Reg'l Hosp., 532 F.3d 28, 30 (1st Cir. 2008)).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant presents a properly focused motion "averring 'an absence of evidence to support the nonmoving party's case[,]' [t]he burden then shifts to the nonmovant to establish the existence of at least one fact issue which is both 'genuine' and 'material.'" Griggs-Ryan v. Smith, 904 F.2d 112, 115 (1st Cir. 1990) (quoting Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990)). For issues where the nonmoving party bears the ultimate burden of proof, that party cannot merely "rely on the absence of competent evidence, but must affirmatively point to specific facts" in the record "that demonstrate the existence of an authentic dispute." McCarthy v. Nw. Airlines, Inc., 56 F.3d 313, 315 (1st Cir. 1995). The plaintiff need not, however, "rely on *uncontradicted* evidence . . . . So long as the plaintiff's evidence is both cognizable and sufficiently strong to support a verdict in her favor, the factfinder must be allowed to determine which version of the facts is most compelling." Calero-Cerezo v. U.S. Dep't of Justice, 355 F.3d 6, 19 (1st Cir. 2004) (emphasis in original).

In assessing a motion for summary judgment, the court "must view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." Griggs-Ryan, 904 F.2d at 115 (citations omitted). There is "no room for credibility determinations, no room for the measured weighing of conflicting evidence such as the trial process entails, [and] no room for the judge to superimpose his own ideas of

probability and likelihood . . . ." <u>Greenburg v. P. R. Mar. Shipping Auth.</u>, 835 F.2d 932, 936 (1st Cir. 1987). The court may, however, safely ignore "conclusory allegations, improbable inferences, and unsupported speculation." <u>Medina-Muñoz v. R.J. Reynolds Tobacco Co.</u>, 896 F.2d 5, 8 (1st Cir. 1990) (citations omitted).

IV.   **Legal Analysis**

1. **First Amendment Political Discrimination**

The First Amendment to the United States Constitution embodies the right to be free from political discrimination. <u>Barry v. Moran</u>, 661 F.3d 696, 699 (1st Cir. 2011). The First Circuit Court of Appeals has held that that right prohibits government officials from "taking adverse action against public employees on the basis of political affiliation, unless political loyalty is an appropriate requirement of the employment." <u>Ocasio–Hernández v. Fortuño-Burset</u>, 640 F.3d 1, 11 (1st Cir. 2011) (internal citations omitted). A *prima facie* case of political discrimination based on the First Amendment consists of four elements: "(1) that the plaintiff and defendant have opposing political affiliations, (2) that the defendant is aware of the plaintiff's affiliation, (3) that an adverse employment action occurred, and (4) that political affiliation was a substantial or motivating factor for the adverse employment action." <u>Lamboy–Ortiz v. Ortiz–Vélez</u>, 630 F.3d 228, 239 (1st Cir. 2010). "Once made, the defendant may then rebut that showing with what is commonly referred to as the <u>Mt. Healthy</u> defense: by proving by a preponderance of the evidence that the governmental agency would have taken the same action," regardless of plaintiff's political affiliation. <u>Reyes-Pérez v. State Ins. Fund Corp.</u>, 755 F.3d 49, 54 (1st Cir. 2014) (citing <u>Díaz-Bigio v. Santini</u>, 652 F.3d 45, 52 (1st Cir. 2011)).

In their memorandum in support of summary judgment, defendants only contest whether Velázquez and Pérez suffered adverse employment actions.[1] See ECF No. 57-1. Where an employee suing under § 1983 claims that a diminution in his or her duties occurred, the court must "determine whether the new work conditions would place substantial pressure on even one of thick skin to conform to the prevailing political view. This level of burden is reached . . . when the employer's challenged actions result in a work situation 'unreasonably inferior' to the norm for the position." Agosto-de-Feliciano v. Aponte-Roque, 889 F.2d 1209, 1219 (1st Cir. 1989).[2] To meet this standard, plaintiff must establish a change in conditions by clear and convincing evidence. Id. at 1220 (noting that proof of an employer's political motivation need only be proven by a preponderance of the evidence). In order to determine whether such a reduction in duties has occurred, "the factfinder should canvass the specific ways in which the plaintiff's job

---

[1] It is uncontested that Cruz is affiliated with the PDP, and that Velázquez and Pérez are affiliated with the NPP. Furthermore, Cruz admitted in his deposition that he knew Velázquez and Pérez were members of the NPP. ECF No. 95-3, at 15, 18. Plaintiffs have also presented evidence of overtly political comments made by Cruz, which were allegedly made in response to complaints that they lacked duties, such as: "This is what you get for having supported Luis Fortuño and being an active member of the [NPP]" and "[d]on't expect anything during the next four years and don't be surprised if you receive a transfer [to] the Eastern region of Puerto Rico and eventually a removal." ECF Nos. 95-2, at 17: 3-9, 20: 23-25, 21: 1.

[2] The year after the First Circuit Court of Appeals decided Agosto-de-Feliciano, the Supreme Court of the United States decided Rutan v. Republican Party of Ill., stating, in dicta, that "[t]he First Amendment . . . protects state employees . . . from even an act of retaliation as trivial as failing to hold a birthday party . . . when intended to punish [them] for exercising [their] free speech rights." 497 U.S. 62, 76 n. 8 (1990) (internal quotation marks and citation omitted). The First Circuit has considered whether Agosto-de-Feliciano's "unreasonably inferior" standard applies in political discrimination cases in light this language from Rutan. Although it has not directly ruled on this issue, the First Circuit has assumed, arguendo, on numerous occasions that Agosto-de-Feliciano's standard continues to apply after Rutan in cases of alleged personnel actions short of demotions or transfers, and has offered a rationale for retaining the standard in such cases:

> We do not regard [Rutan's] colorful rhetoric as necessarily foreclosing something like the 'unreasonably inferior' rule for personnel actions short of demotions or transfers. The Rutan Court was concerned with deprivations less harsh than dismissal that nevertheless press state employees and applicants to conform their beliefs and associations to some state-selected orthodoxy, a formulation similar to Agosto-de-Feliciano's standard . . . .

Acosta-Orozco v. Rodríguez-de-Rivera, 132 F.3d 97, 101 n. 5 (1st Cir. 1997) (internal quotation marks and citation omitted); see also Ortiz García v. Toledo Fernández, 405 F.3d 21, 23 (1st Cir. 2005) (citing Acosta-Orozco v. Rodríguez-de-Rivera, 132 F.3d 97, 101 n. 5 (1st Cir. 1997)); Acevedo-García v. Vera Monroig, 204 F.3d 1, 12 (1st Cir. 2000); Nereida-González v. Tirado-Delgado, 990 F.2d 701, 705 (1st Cir. 1993).

has changed" in order to reach a determination as to "whether the 'new' job is unreasonably inferior to the one she previously had." Id. at 1219-20; see also Ortiz García v. Toledo Fernández, 405 F.3d 21, 23 (1st Cir. 2005) (explaining that in reduction of responsibilities cases the factfinder must determine if "the position she occupies now materially differs from the position as it existed previously."). "[T]he factfinder's responsibility, in brief, is to determine whether the employee has retained duties, perquisites and a working environment appropriate for his or her rank and title." Agosto-de-Feliciano, 889 F.2d at 1220.

### a.  Plaintiff Velázquez

Velázquez argues that since Cruz assumed the position of Regional Director, a typical day for him as Deputy Director of the Southwest Region of the DSR consists of sitting in his office and staring at the walls. Velázquez stated in his deposition that several days after Cruz became Regional director, on February 6, 2013:

> I went to see [Cruz] and told him that I had noticed that everyone had started working and I told him that I would like to meet with him to discuss the transition report. He told me he'll meet with me later to discuss the report and I asked him what my duties were going to be, because I am not used to just sitting down and not doing anything. I've always been in the region moving around and I had been without any duties for several days.

ECF No. 95-2, at 14: 8-22. Velázquez also indicated in his deposition two weeks passed and he was in the "same situation" and that he and Pérez met with Cruz once again to inquire about what their duties would be, stating to Cruz: "Benjamin we hear [sic] because we have no duties, staring at a wall for seven and a half hours."[3] Id. at 16: 4-5, 10-25 (internal quotation marks

---

[3] Plaintiffs' evidence that Velázquez told Cruz he and Pérez lacked duties and stared at walls during the workday is technically hearsay, if offered to establish that they in fact lacked duties at that time. Fed.R.Evid. 801. Defendants have not raised a hearsay objection in response to plaintiffs' proposed facts that are supported by this testimony (See ECF Nos. 95-1, ¶¶ 20-22, 32-35; 103-1, ¶¶ 20-22, 32-35. Regardless, in order to cure the hearsay problem, Velázquez can take the stand and adopt the prior statement as his testimony, if he chooses to do so. See, e.g., Amarin Plastics, Inc. v. Maryland Cup Corp., 946 F.2d 147, 153 (1st Cir. 1991) (citing Fed.R.Evid. 801 advisory committee's note (d)(1)).

omitted). Velázquez also claims that Cruz stated that he was following instructions from his boss, Orta, and that Cruz ordered Velázquez and Pérez to stay in their offices until they received new instructions, informing them, "This is what you get for having supported Luis Fortuño and being an active member of the [NPP]". Id. at 17: 3-9. Finally, according to Velázquez's deposition, he and Pérez met with Cruz for a third time, "a week or two later," and complained that they had no job functions assigned to them. Id. at 17: 12, 18: 2-3, 19: 1-4. In addition to Velázquez's testimony regarding the meetings with Cruz, Velázquez's deposition, taken on August 25, 2014, also states:

> Q:   Could you describe for us a typical day for you as the deputy director of the Western region of the Department Of Recreation and Sports?
>
> A:   Now, at this time?
>
> Q:   Yes, yes.
>
> A:   Nothing, sitting in an office staring at the wall.

Id. at 9: 24-25, 10: 1-5.

Lacking from plaintiffs' deposition testimony is a description of which particular duties he was performing prior to the change in administration. The only evidence regarding Velázquez's "old" job is his statement that he was not used to sitting around without work and the vague statement that he had always been "in the region moving around." This testimony is sufficient to allow a reasonable factfinder to determine that *some* change in Velázquez's job duties occurred subsequent to Cruz's assumption of the Regional Director role, but fails to elucidate what precisely changed, in order to enable the factfinder to make a comparison between his old and new positions. Complicating the factfinder's task of determining whether Velázquez experienced a deprivation or removal of the duties of the Deputy Director position is the fact that prior to Cruz becoming Regional Director, Velázquez served as *de facto* Regional

Director, while retaining his career position as Deputy Director. In cases in which an employee held a trust position for a limited duration and also retained a career position, the removal of the duties associated with that trust position after a change in administration does not constitute an adverse employment action. See Ortiz García v. Toledo Fernández, 405 F.3d 21, 24 (1st Cir. 2005). ("While Ortiz held the Agronomist IV position before being promoted to a trust position, she has not presented evidence comparing her duties to her duties when she previously held the [Agronomist IV] position. Thus, a factfinder would have no way to know whether the position she occupies now materially differs from the position as it existed previously."); and Agosto-de-Feliciano, 889 F.2d 1209 ("An employee who previously had predominantly exciting and responsible work and who was left with only a few routine and technical assignments could be found to meet [the 'unreasonably inferior'] standard so long as his prior duties reflected the usual nature of his position rather than his prior high status as a member of the then-prevailing party.").

Velázquez's job description and duties form for the Deputy Director of the Southwest Region provides some insight into the "norm" for his career position, filling in the gap from his deposition testimony. The form, which he signed on July 7, 2009, states:

> Describe the work and duties *that you perform* in order of importance; identify and list the essential duties of the position first, followed by the secondary duties and tasks. This is the most important part of the form. Use your own words and describe your duties in a clear way that would allow people who are not familiar with your job to understand exactly what it is *that you do*.

ECF No. 68-4 (emphasis added). As such, it is not a generic job description form for the Regional Director position, but solicits a description of the duties of the position that he was in fact performing and what he was doing in his role as of the date he signed the form. It contains a list of fourteen duties in response, which include: collaborating in planning, coordinating, supervising, and directing activities carried out in the region; collaborating in preparing and

following up on work plans; standing in for the Regional Director when he is absent or on vacation; collaborating in formulating and evaluating the objectives and achievements of the region; drafting memoranda and communications for the Director to sign; attending and investigating citizen complaints; collaborating in supervising and evaluating personnel; preparing and submitting work reports; coordinating with central and regional offices to search for information and follow up on cases; providing information to government employees and visitors about the services the DSR offers; supervising construction, repair and / or maintenance projects at regional facilities; collaborating in studies aimed at maximizing the utilization of available resources in the region to develop activities; collaborating in drawing up and adopting quality control and performance rules in the region's recreational and athletic activities; and participating in bidding processes, as needed. Id.

If a reasonable jury were to credit Velázquez and find that after Cruz became Regional Director Velázquez lacked any duties, staring at the walls in his office during the workday, it could determine that his work situation was "unreasonably inferior to the norm," as compared to the duties he listed in the job description. Although it is uncontested that Velázquez arranged for an air-conditioning system to be fixed at some point in 2013, after Cruz became Regional Director, that Cruz assigned Velázquez to coordinate "the connection and interplay of a sanitary pipeline between over three hundred houses and two [DSR] stadiums to prevent the 'overflowing of the waters'" in May or June 2014, and that Cruz tasked Velázquez with representing him at a School of Agriculture forum in August 2014, defendants have not adduced evidence regarding how long these tasks took to perform. It is possible that the duties that were assigned to Velázquez were relatively time-consuming, leaving no time for him to perform his other responsibilities, but such a finding would be speculative from the evidence to which defendants

10

have cited with specific citations to the record. That Velázquez had some work assigned during Cruz's tenure does call into question his assertion that he was simply staring at the walls during working hours, raising an issue of fact for the jury to consider. Nevertheless, while the evidence that Velázquez had a few responsibilities throughout 2013 and 2014 undermines his assertion that he had *no* duties, it would not preclude a rational factfinder from concluding that he experienced a material change or reduction in duties.

In addition to his testimony that he complained to Cruz about sitting around without work, Velázquez testified at his deposition that Cruz said to him, "Well, if I give you your duties back, are you willing to erase the past and just start off a new, on a clean slate[?]".[4] ECF No. 96-2, at 47: 20-22. From this statement, as well as Cruz's comment that "[t]his is what you get for having supported Luis Fortuño and being an active member of the [NPP]," which he rendered in response to their complaints that they lacked duties, a jury could reasonably infer that Cruz in fact deprived Velázquez of duties that correspond to his Deputy Director position. Taking into account these statements, as well as a comparison of the evidence regarding Velázquez's duties while Cruz was Regional Director and the duties he reported performing at the time he filled out his job description form, defendants' request for summary judgment of Velázquez's First Amendment political discrimination claim is denied.

---

[4] It appears that this conversation took place after the complaint was filed in this case, as according to Velázquez Cruz was willing to "give back [their] duties" if they "dropped" their cases. ECF No. 96-2, at 47-48. In response to plaintiffs' proposed facts citing to evidence of these statements defendants do not object that the statements are inadmissible pursuant to Federal Rule of Evidence 408, as statements made during an attempt to compromise the claims or settle the case. Thus, defendants have waived the objection that pursuant to Rule 408 the court should not consider such evidence at the summary judgment stage. See, e.g., Thomas & King, Inc. v. Jaramillo, No. 08–191, 2009 WL 649073, at *3 (E.D.Ky. Mar.10, 2009) ("Evidence not meeting the requirements of Rule 56(e) 'may be considered by the district court unless the opposing party affirmatively raises the issue [of] the defect.' " (quoting Bennett v. Univ. Hospitals of Cleveland, 981 F.Supp. 1065 (N.D.Ohio 1997))); Jackim v. Sam's East, Inc., 378 F. App'x 556, 564 (6th Cir.2010) (noting that a party waives evidentiary objections to summary judgment materials by not raising them to the trial court). However, the court expresses no opinion as to how this issue would be ruled upon if raised at or prior to trial.

### b. Plaintiff Pérez

Like Velázquez's job description form, Pérez's Transportation Officer job description form, which he signed on March 26, 2009, instructs him to describe the work and duties "that [he] perform[s]." ECF No. 68-5. The duties enumerated in Pérez's job description form include: recording and keeping control of official vehicles; inspecting all vehicles under his charge to ensure they are in "optimal condition"; ensuring that vehicles are repaired and maintained either in the Transportation Office or in private shops; preparing requests for the purchase of parts; keeping vehicle files and repairs up to date; asking the General Services Administration to "decommission" vehicles when they can no longer be used; submitting monthly gasoline, diesel, and oil consumption reports and submitting a monthly report on vehicle usage; filling out traffic accident forms; coordinating the process of tires being mounted on vehicles; coordinating the presence of drivers for special activities; preparing requests for motor vehicle accessories; keeping administrative control of forms and requests for vehicle registrations, materials, drivers' licenses of transportation personnel, expiration dates, vehicle inspection seals, and renewals. ECF No. 68-5. Additionally, Pérez's job description form indicates that he obtains work via detailed instructions regarding his tasks, suggesting that it is incumbent upon his superiors to assign him work, rather than his independent responsibility to seek out and complete the tasks contained in his job description. Id.

Pérez argues that out of the twelve functions included in his job description, he "only performs the one related to the filing of gasoline consumption reports." ECF Nos. 95; 95-1, at 15, ¶ 26. He cites to evidence that the remainder of his job functions, as defined in the job description for the Transportation Officer position, have been assigned to other DSR employees or have not been assigned to him. ECF No. 95-4, at 3: 14-25, 4: 1-8, 5: 8-17, 6: 3-25, 7: 1-17, 9:

21-25, 10: 1-25, 11: 1-17, 12: 1-25, 13: 1-25, 14: 1-17, 27: 5-22. Pérez indicated in his deposition that the tasks of registering and maintaining control of the entry and exit of official vehicles, inspecting vehicles, following up on repairs and maintenance of vehicles at the transportation office or in private shops, and preparing requisitions for buying parts were all performed by an individual named Edwin González, subsequent to Cruz becoming Regional Director. Id. With regard to the task of maintaining files of vehicles and keeping repairs up to date, Pérez stated "they are not letting me go to the shop to be able to fulfill the duty fully," and as to asking the General Service Administration to decommission vehicles, he indicated "they don't have me do that." Id. at 12: 5-6, 13-23. Pérez also stated that although there have been accidents with official vehicles, he has not been assigned the task of filing out traffic accident reports, contained in his job description, and that he is "being prevented" from coordinating the installation of tires on vehicles, preparing requisitions for motor vehicle accessories, and keeping administrative control over forms and requests for vehicle registrations, material, drivers' licenses, inspection stamps, and their respective renewals. Id. at 13: 21-25, 14: 1-11. In view that Pérez's job description is not merely a boilerplate form for the Transportation Officer position, but in fact contains a list of job functions he says he performed at the time he completed the form, the fact that he claims to only have been assigned one of the twelve functions in his job description after Cruz became Regional Director could lead a reasonable jury to find that he experienced an adverse employment action.

Although it is uncontested that Pérez submits a monthly report on the utilization of vehicles, that during February, 2014, he "executed the inspection" of at least fourteen vehicles belonging to the DSR, and that in May, 2014, he executed and completed at least three requisition actions, a reasonable jury could nevertheless determine that his position was

unreasonably inferior to the norm by contrasting those responsibilities with the list of duties in his job description and taking into account his testimony that the majority of his duties were not assigned to him. These additional duties may impeach his testimony that he only performed the task of filing gasoline consumption reports, which is an issue for the jury to ponder. However, the fact that Pérez completed one additional monthly report during Cruz's tenure and performed vehicle inspections during and requisition actions in 2014—after the complaint was filed— would not prevent a jury from concluding that Pérez experienced a material change in his duties.[5] Thus, defendants' claim that the case should be dismissed for lack of evidence that Pérez experienced an adverse employment action is denied.[6]

### 2.   Qualified Immunity[7]

The doctrine of qualified immunity protects defendants in their individual capacities from liability for money damages." Roldan-Plumey v. Cerezo-Suárez, 115 F.3d 58, 66 (1st Cir, 1997). To determine if a public official is entitled to qualified immunity, the court examines: "(1) whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right was clearly established at the time of the alleged violation; and (3) whether a similarly situated reasonable official would have understood that the challenged action violated the constitutional right at issue." Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004) (citation omitted).

The court noted in denying codefendant Orta's motion to dismiss plaintiffs' political discrimination claims that plaintiffs' allegations, taken as true, establish a constitutional

---

[5] Plaintiffs also present evidence that Cruz moved Pérez to an office "which would get wet" and that did not have a computer or a telephone. ECF Nos. 95-1, ¶ 23. He presents no evidence regarding the state of his old office, however, or whether a telephone and computer are the norm for the position.
[6] Defendants do not raise a Mt. Healthy defense in their motion for summary judgment. See ECF No. 57-1.
[7] In ruling on his "motion for judgment on the pleadings" the court denied Cruz's request for qualified immunity. See ECF No. 39, at 2. To the extent that Cruz's second request for qualified immunity, contained in his motion for summary judgment, is a request for reconsideration of the court's prior ruling it is untimely. However, even considering the merits of his qualified immunity argument, his request is denied for the reasons stated in this opinion.

violation. See ECF No. 37, at 2. Cruz argues that the law pertaining to political discrimination, deprivation of duties cases was not "clearly established" at the time of the alleged violations, in view that the First Circuit Court of Appeals has called into question the "unreasonably inferior" standard it articulated in Agosto-de-Feliciano. ECF No. 57-1, at 17. To the extent that Rutan created uncertainty regarding the standard for adverse employment actions short of demotions or transfers, it suggested that even "trivial" employment actions may be actionable, such that Agosto-de-Feliciano's "unreasonably inferior" standard might be too favorable to employers. See Acosta-Orozco v. Rodríguez-de-Rivera, 132 F.3d 97, 101 n. 5 (1st Cir. 1997) (internal citation marks and citation omitted). While Cruz argues that a "gray area" exists in the First Circuit's jurisprudence regarding deprivation of duties cases, there is no doubt as to whether depriving duties based on an employee's political affiliation is illegal: "[F]or nearly a quarter of a century, First Circuit precedent has clearly established that reduction in responsibility, when alleged under the auspices of political discrimination, violates the First Amendment. . . ." Dávila-Torres v. Feliciano-Torres, 934 F.Supp.2d 359, 370 (D.P.R. 2013) (denying the defendant's request for dismissal on the basis of qualified immunity (citing Torres-Santiago v. Municipality of Adjuntas, 693 F.3d 230, 242 (1st Cir. 2012); Agosto-de-Feliciano, 889 F.2d at 1219)). Based on the current state of the law a reasonable official would have understood that removing Velázquez's and Pérez's duties because they belong to the NPP would violate the First Amendment. Therefore, Cruz's request to dismiss the complaint against him based on the argument that he is entitled to qualified immunity is denied.

### 3. Fourteenth Amendment Equal Protection Claims

Defendants' final argument is that plaintiffs' Fourteenth Amendment Equal Protection Clause claims should be dismissed because they are based on the same facts that underlie their

First Amendment claims. See ECF No. 57-1, at 18. Plaintiffs do not respond to this argument. See ECF No. 96. "An equal protection claim alleging political discrimination, merely restates a First Amendment political discrimination claim and . . . [should be] considered under the First Amendment." Uphoff Figueroa v. Alejandro, 597 F.3d 423, 426, 430 n. 8 (1st Cir. 2010); Pagán v. Calderón, 448 F.3d 16, 36 (1st Cir. 2006); see also Quiles Santiago v. Rodríguez-Díaz, 851 F.Supp. 411, 426 (D.P.R. 2012) (dismissing equal protection claim that "merely reiterate[d]" First Amendment political discrimination claim); Marrero-Sáez v. Municipality of Aibonito, 668 F.Supp.2d 327, (D.P.R. 2007) (same). A review of plaintiffs' amended complaint reveals that their First and Fourteenth Amendment claims rest on the same allegations of political discrimination. See ECF No. 5. Therefore, they are properly analyzed under the First Amendment political discrimination framework, and plaintiffs' Fourteenth Amendment claims are dismissed with prejudice.

## V.  CONCLUSION

Like the plaintiff in Rodríguez García v. Miranda Marín, there is evidence that Velázquez and Pérez "spent most of [their] time doing nothing" and had "few tasks assigned to [them]." 610 F.3d 756, 767 (1st Cir. 2010). In Rodríguez García, however, the plaintiff presented evidence that prior to being transferred she "had a variety of job responsibilities including logging incoming mail, maintaining the director's schedule, organizing files, taking dictation, creating letters, and working with other departments on human resources and administrative matters." Id. Although plaintiffs have not adduced evidence about their duties and responsibilities immediately prior to the change in administration, when Cruz became Regional Director, their job descriptions solicit a list of specific duties that actually performed in their roles as Deputy Director and Transportation Officer. The lists of duties contained in their job descriptions

contrasted with their accounts of their limited duties with Cruz as Regional Director could allow a reasonably jury to conclude that their "job duties and working environment were substantially altered," such that they experienced a change in conditions that amounted to an adverse employment action. Id. Drawing all reasonable inferences in favor of plaintiffs, as the non-movants, defendants' motion requesting summary judgment on grounds that Velázquez and Pérez did not experience adverse employment actions is DENIED. Cruz's request for dismissal on qualified immunity grounds is also DENIED, as the First Circuit jurisprudence is clear that reducing an employee's duties on the basis of their political affiliation violates the First Amendment. Because plaintiffs' First and Fourteenth Amendment claims involve the same allegations, defendants' motion to dismiss the Fourteenth Amendment claims is GRANTED and all Fourteenth Amendment claims in this case are DISMISSED WITH PREJUDICE.[8]

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 31st day of July, 2015.

s/Marcos E. López
U.S. Magistrate Judge

---

[8] With respect to the supplemental claims under Puerto Rico law, defendants request for the court to decline to exercise supplemental jurisdiction "in the absence of any other federal claims." Because Velázquez's and Pérez's First Amendment claims remain active and defendants have not developed any other argument for dismissal of the supplemental law laws, the request for dismissal of such claims is denied.